

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00654-CV

———————————————————

IN THE INTEREST OF R.A., A CHILD

On Appeal from the 233rd District Court
Tarrant County, Texas
Trial Court No. 233-751157-24

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Justice Bassel

**MEMORANDUM OPINION**

Ann[1] is a child subject to the continuing, exclusive jurisdiction of the State of Washington. Despite that, while Ann was in Texas with Father, the trial court asserted temporary emergency jurisdiction over her as authorized under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). *See* Tex. Fam. Code § 152.204(a). About a year and a half later, the trial court determined that it no longer had a basis for asserting temporary emergency jurisdiction over Ann and dismissed its proceeding. Father appealed.

While the appeal was pending, we instructed the trial court to conduct a hearing to determine what, if any, events had occurred in Washington that might have affected our jurisdiction. Complying with our order, the trial court conducted a UCCJEA conference with the Washington court, at which the trial court admitted numerous exhibits.

Based on this hearing and the admitted exhibits, we asked the parties to brief whether we had lost jurisdiction because Father's appeal is moot. Father argued that his appeal is not moot. Mother maintained that it is. We agree with Mother and hold that Father's appeal is moot; thus, we dismiss it for want of jurisdiction.

---

[1]To protect the child's identity, we use an alias when referring to her and refer to her family members by their relationship to her. *See* Tex. Fam. Code § 109.002(d); Tex. R. App. P. 9.8(b)(2).

# I. Trial Background

In July 2021 in Washington, Father and Mother agreed to a court-ordered parenting plan for Ann. Mother was named the primary custodian, but Mother and Father shared joint decision-making responsibilities. Father was given a possession schedule.

In 2023, Ann went to visit Father in Texas during her summer break but failed to return to Washington. Washington ordered Ann returned to Mother. But when Mother attempted in May 2024 to obtain and execute in Texas a writ of habeas corpus, Ann made outcries against Mother. To protect Ann, the trial court asserted temporary emergency jurisdiction under the UCCJEA, and based on Ann's allegations, the Texas Department of Family and Protective Services (the Department) filed a petition to terminate Father's and Mother's parental rights.[2]

For the next year and a half,[3] the Department's termination petition remained active, and the trial court eventually set it for trial on November 11, 2025. Simultaneously, however, Father and Mother were litigating custody issues in Washington; the trial court kept abreast of developments in Washington based on UCCJEA conferences conducted on June 12, 2024, and March 27, 2025.

---

[2]Mother denied the allegations and asserted that Ann had made the same allegations in Washington in 2022, that Washington had investigated the allegations, and that Washington had determined that they were unfounded. Mother's attorney told the Department's investigator that Ann had been "brainwashed."

[3]After initially placing Ann with Father, the trial court placed her in a temporary emergency shelter at the Department's request. After four months, the trial court again placed Ann with Father.

Father himself alerted the trial court in Texas to new developments in Washington. Before the November 11, 2025 trial setting in Texas, on October 27, 2025, Father filed a motion in which he requested a third UCCJEA conference because he had filed a proposed parenting plan in Washington and because Washington had set a temporary-orders hearing for November 18, 2025.[4] Father also advocated for Texas to become Ann's home state and to divest Washington of its continuing, exclusive jurisdiction.

Mother responded by filing on November 3, 2025, objections to Father's request for a third UCCJEA conference and a motion to remove the final trial setting. She argued that Washington was the state with continuing, exclusive jurisdiction; that Washington was proceeding with a hearing on November 18, 2025; and that Texas had no authority to render a final judgment after exercising temporary emergency jurisdiction. Therefore, she urged the trial court to instead defer to Washington's jurisdiction over Ann.

Notwithstanding Mother's objections, on November 6, 2025, the trial court signed an order indicating that it was proceeding with a final trial on November 11, 2025. November 13, 2025, was the last day for the trial court to try the Department's

---

[4]A supplemental record supports Father's assertion that Washington had set a temporary-orders hearing for November 18, 2025; however, the setting appears to have been on the basis of Mother's motion for temporary orders and Father's response to Mother's motion for temporary orders. In that response, Father asserted that Mother's proposal (placing Ann with Mother or with Mother's sister) was not in Ann's best interest, that Ann had lived in Texas for two years to protect Ann from Mother's abuse, and that he should be Ann's custodial parent with Mother having no decision-making ability.

4

termination proceeding before it was automatically dismissed. *See* Tex. Fam. Code § 263.401(c).

But instead of beginning trial on November 11, 2025, the trial court signed the following order:

> On November 10, 2025, this case came on for consideration.
>
> The Court finds that the child the subject of this suit does not reside in Tarrant County, Texas, but in Whatcom County, Washington, where there is a current pending case regarding this child, and therefore Tarrant County lacks jurisdiction over the child the subject of this suit.
>
> IT IS THEREFORE ORDERED that the above-entitled and numbered cause of action is dismissed for lack of jurisdiction.

This order contradicts the record, which shows that Ann had resided in Texas since the Department filed its original petition and that she was still living in her court-ordered placement with Father as late as November 3, 2025. Father appealed the dismissal. The Department did not.

## II. Appellate Background

In their briefing, Father and the Department both contend that the trial court's dismissal order left Ann in limbo and in danger because Washington had not signed any order protecting her and that the trial court was statutorily prohibited from dismissing the case before Washington had signed an order protecting Ann.[5] Based on the record then before us, it appeared that although a year and a half had passed, Washington had not yet signed an order protecting Ann. But the record also showed

---

[5]We express no opinion on whether this is a correct construction of Section 152.204(c) of the Texas Family Code.

that Washington had scheduled a hearing for November 18, 2025, that might have produced the desired order.

Meanwhile, Mother asserted that the trial court might have had a third UCCJEA conference with the Washington court off the record and without the parties' participation. On March 10, 2026, we ordered the trial court to clarify whether it had conducted a third UCCJEA conference. The trial court responded that it had conducted a UCCJEA conference on November 10, 2025, but that no record was made of it. The trial court found that Washington had "continue[d] to exercise jurisdiction over this matter and accordingly ha[d] scheduled subsequent hearings to address outstanding issues in this matter." The trial court also concluded that its "emergency jurisdiction [did] not authorize [it] to assume jurisdiction over . . . the Washington . . . [c]ourt."

Next, based on (1) the record's showing that Washington had scheduled a hearing on November 18, 2025; (2) the trial court's finding that Washington "ha[d] scheduled subsequent hearings to address outstanding issues in this matter"; and (3) our concern that the Washington proceedings might have mooted Father's appeal, we ordered the trial court on March 18, 2026, to conduct another hearing on the record with counsel present to determine what, if any, subsequent events had occurred in Washington that might have affected Texas's jurisdiction over this dispute. Complying with our order, the trial court on March 26, 2026, conducted a fourth UCCJEA conference on the record with the parties present. During this

6

hearing, the Washington court discussed the history of the Washington proceedings and introduced as an exhibit a "spreadsheet" or docket sheet listing its actions.[6] Mother and Father also introduced multiple exhibits. Ultimately, a three-volume supplemental reporter's record was filed with us on April 6, 2026.

Among the exhibits was Washington's January 30, 2026 Temporary Family Law Order. Early in the order, it provides, "There is not a sufficient basis to alter the current parenting plan at this time other than as indicated below . . . ." The "current parenting plan" referenced is the July 22, 2021 agreed parenting plan, which was also among the exhibits admitted at the hearing. That parenting plan specifically provides that no basis existed (such as neglect, physical abuse, or sexual abuse) for limiting either parent's access to Ann.

Washington's Temporary Family Law Order, under the heading "Care and safety of children," states that the court will appoint a guardian ad litem "to investigate and report on issues affecting" Ann and that the court will order the guardian ad litem to investigate all issues related to making a parenting plan for Ann, including any issues discovered that could affect her safety. Later under the same heading the order then provides,

> The parties shall follow the 7/22/2021 Final Parenting Plan with the following modifications:

---

[6]In addition to the modification proceeding, the Washington courts were simultaneously considering a guardianship application for Ann, which involved numerous evidentiary hearings.

7

•      All of [Father's] parenting time shall occur within Washington State.  He must give 14 days written notice to confirm his intent and plan for exercising his parenting time.

•      The parents shall ensure [Ann] is in counseling or therapy as previously ordered by the parenting plan.

•      The Sec. 5 Decision making provisions on p. 2 of 12 remain in effect so long as both parents are full[-]time residents of . . . Washington State.  If [Father] is not a full[-]time resident of Washington State, then [Mother] shall have the sole authority to make all decisions for the areas described in Sec. 5 because one of the parents does not want to share decision-making and this is reasonable because of the parents' ability and desire to cooperate with each other in decision-making and the distance between the parents' homes makes it hard to make timely decisions together.

These custodial [and] parenting plan provisions are stayed for 45 days to allow for the filing of a Motion for Revision under WCCR 54.2.

Based on the documents from the supplemental reporter's record, Father did not file a motion for revision seeking to modify the Temporary Family Law Order.

We granted the parties leave to file supplemental briefs addressing whether, based on the supplemental reporter's record, Father's appeal is now moot.  Father and Mother filed supplemental briefs.  The Department did not.  In Father's supplemental brief, he argues that his appeal is not moot.

### III.  Discussion

### A.  UCCJEA Temporary Emergency Jurisdiction

This case began when Texas asserted temporary emergency jurisdiction under Family Code Section 152.204(a).  *See* Tex. Fam. Code § 152.204(a) ("A court of this state has temporary emergency jurisdiction if the child is present in this state and . . . it

8

is necessary in an emergency to protect the child because the child . . . is subjected to or threatened with mistreatment or abuse."). A court proceeding according to Section 152.204 is empowered to act only on a short-term, temporary, emergency basis when the potential for immediate harm exists. *In re S.J.*, 522 S.W.3d 576, 580 (Tex. App.— Houston [14th Dist.] 2017, orig. proceeding [mand. denied]). Under the statute, when another state's court has continuing, exclusive jurisdiction, Texas's temporary emergency jurisdiction is designed to "expire" at a certain point. *See* Tex. Fam. Code § 152.204(c). Any order issued by the trial court asserting temporary emergency jurisdiction must specify "a period that the court considers adequate to allow the person seeking an order to obtain an order from the [other] state," and the Texas court's jurisdiction "remains in effect until an order is obtained from the other state within the period specified or the period expires." *Id.*[7] And the Texas court and the court having continuing, exclusive jurisdiction must communicate "to resolve the

---

[7]The trial court here did not specify a Section 152.204(c) jurisdictional expiration mechanism in its initial May 13, 2024 "Order for Protection of a Child in an Emergency" or in its May 24, 2024 "Order Extending Emergency Orders." It did, however, include a Section 152.204(c) expiration mechanism in its June 12, 2024 "Agreed Temporary Order Following Full Adversary Hearing": "Texas shall retain emergency jurisdiction until a hearing can be held in Washington State on a motion to modify parenting plan. Mother . . . will file [a] Motion to Modify Parenting Plan with the intent of designating [C.D.] and [M.D.] (family members) as temporary conservators in . . . Washington." The record shows that Mother filed a petition to modify the parenting plan in Washington in August 2024 and that the Washington court heard testimony on multiple occasions in October and November 2024 and in March 2025. The parties did not brief whether the trial court's temporary emergency jurisdiction expired under Section 152.204(c) before it signed the November 11, 2025 dismissal order.

9

emergency, protect the safety of the parties and the child, and determine a period for the duration of the temporary order." *Id.* § 152.204(d).

## B. The Appeal is Moot

In his supplemental brief, Father argues: (1) the emergency conditions that gave rise to Texas's emergency jurisdiction persist and remain unaddressed by Washington; (2) the trial court held an unnoticed third UCCJEA conference the day before trial without notifying counsel or allowing evidence and then sua sponte cancelled the trial; and (3) the trial court excluded Father's testimony at the March 26, 2026 hearing that this court ordered. Notwithstanding these arguments, because the Washington court has now issued an order addressing Ann's safety, we hold that Father's appeal is moot and that we lack jurisdiction.

Courts always have jurisdiction to determine their own jurisdiction and must do so sua sponte when it seems in doubt. *Tex. Right to Life v. Van Stean*, 702 S.W.3d 348, 355–56 (Tex. 2024); *Haynes & Boone, LLP v. NFTD, LLC*, 631 S.W.3d 65, 71 (Tex. 2021). A case becomes moot when a justiciable controversy no longer exists between the parties or when the parties no longer have a legally cognizable interest in the outcome. *Tex. Dep't of Fam. & Protective Servs. v. N.J.*, 644 S.W.3d 189, 192 (Tex. 2022). "A case may become moot at any time, including on appeal." *Id.* "[C]ourts lack subject-matter jurisdiction to decide a moot controversy . . . ." *Id.*

Father's appeal was initially premised on the absence of a Washington order protecting Ann.[8]  But a Washington court has now signed an order addressing Ann's safety—the Temporary Family Law Order.[9]  Thus, under Section 152.204(c), the trial court no longer has a basis for asserting temporary emergency jurisdiction over Ann in this case.  *See S.J.*, 522 S.W.3d at 582 (holding that absent an emergency, the trial court had no basis for asserting temporary emergency jurisdiction); *Seligman-Hargis v. Hargis*, 186 S.W.3d 582, 585 (Tex. App.—Dallas 2006, no pet.) (providing that only the child's "home state" jurisdiction has the authority to make child-custody determinations).  Were we to remand this case to the trial court, it would have no

---

[8]The absence of a Washington order protecting Ann was Father's first issue in his original brief.

[9]The Washington court did not hear evidence, relying instead on the parties' pleadings and argument.  But this result is consistent with what Mother told the Department investigator in 2024, that is, that Ann had made the same allegations in Washington in 2022, that Washington had investigated the allegations, and that Washington had determined that they were unfounded.  Part of the supplemental record includes March 2026 text messages between Father and Mother that possibly place Ann's outcries in a new light.  Mother had texted Father to verify whether Ann had made a March 11, 2026 flight to Washington.  Father responded that he had checked her in at the airport and walked her to the gate but that Ann thereafter made outcries to the airport staff, which prompted the staff to call 911.  Although not expressly stated, based on the tenor of the texts between Father and Mother, Ann did not make her flight to Washington.  Nevertheless, no party has informed this court of any new Department proceedings or criminal investigations being filed as a result of Ann's alleged outcry.

choice but to dismiss the proceeding; thus, no justiciable controversy exists. *See* Tex. Fam. Code § 152.204(c); *see also id.* § 152.206(b).[10]

While this case was pending, Father continued to litigate Ann's custody in Washington and has failed to persuade the court to name him Ann's custodial parent and to limit Mother to supervised contact. To the extent that Father is dissatisfied with the Washington order, his remedy was to file a motion for revision, which the order specifically provided for. Based on the record before us, he did not do that.

In his first issue, Father appears to want to leverage his dissatisfaction with Washington's ruling and his failure to further litigate it in Washington as a basis to continue to vest the trial court with temporary emergency jurisdiction. We have found no authority providing a basis for doing so. *See generally In re Lewin*, 149 S.W.3d 727, 740 (Tex. App.—Austin 2004, orig. proceeding) ("To allow a parent to deliberately secrete a child to Texas for the purpose of obtaining a child custody determination in the state would make a mockery of the statute. . . . Furthermore, a primary purpose of the UCCJEA is to avoid the relitigation of child custody issues."); *see also In re J.P.*, 598 S.W.3d 789, 798 (Tex. App.—Fort Worth 2020, pets. denied) ("Courts are to interpret the UCCJEA according to its purposes, which are to promote cooperation with the courts of other states so that the state best positioned to

---

[10]In a concurring opinion, three Texas Supreme Court justices have indicated that the UCCJEA does not implicate a trial court's subject-matter jurisdiction for finality purposes. *In re D.S.*, 602 S.W.3d 504, 518–214 (Tex. 2020) (Lehrmann, J., concurring). But a majority of the court has not so ruled. Regardless, because the UCCJEA mandates the same result here, a remand to the trial court would be useless.

decide custody issues does so and to promote consistent and speedy resolution of child-custody issues involving multiple states."); *Saavedra v. Schmidt*, 96 S.W.3d 533, 549 (Tex. App.—Austin 2002, no pet.) ("A court's exercise of temporary emergency jurisdiction is temporary in nature and may not be used as a vehicle to attain modification jurisdiction for an ongoing, indefinite period of time."). His remedy is to litigate the matter in the state with continuing, exclusive jurisdiction, and that state is Washington.

Washington—the state with continuing, exclusive jurisdiction—has now issued an order addressing both custody and Ann's safety; thus, the trial court no longer has a basis for asserting temporary emergency jurisdiction. *See* Tex. Fam. Code § 152.204(a), (c); *S.J.*, 522 S.W.3d at 580. If the trial court has no basis for asserting jurisdiction, we have no basis for asserting jurisdiction. *In re J.S.*, 35 S.W.3d 287, 291 (Tex. App.—Fort Worth 2001, no pet.) ("Our appellate jurisdiction is thus derivative of the trial court's jurisdiction."). Accordingly, we conclude that this appeal is moot.

## IV. Conclusion

"[T]he only proper judgment in a moot case is one of dismissal for lack of jurisdiction." *Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 862 (Tex. 2025). Accordingly, because Father's appeal is moot, we dismiss it for want of jurisdiction. *See id.*

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: May 14, 2026

13